UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| STEPHANIE SALGADO, individually and on behalf of all others similarly situated, | ) ) ) |
| Plaintiff, | ) ) |
| v. | ) ) |
| A-ALERT SECURITY SERVICES, INC. and RICKEY MARTINEZ, | ) ) ) |
| Defendants. | ) |

**COLLECTIVE ACTION COMPLAINT**

Plaintiff Stephanie Salgado ("Stephanie") or ("Salgado"), by and through her undersigned counsel, brings this action against A-Alert Security Services, Inc. ("AASS") and Rickey Martinez ("Martinez") on behalf of herself and all similarly situated current and former employees of A-Alert Security Services, Inc. With knowledge as to herself and otherwise upon information and belief, Plaintiff alleges as follows:

**NATURE OF THE SUIT**

1. This suit arises under the United States Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 201 *et seq.*, and the Illinois Minimum Wage Law ("IMWL"), 820 ILCS § 105/1, *et seq.*, for Defendants' failure to pay their security guards at the statutorily–mandated overtime rates when they worked over forty hours in a work week.

2. Plaintiff Salgado brings this case as a collective action under 29 U.S.C. § 216(b). Plaintiff's consent form to act as a representative party in this collective action is attached as **Exhibit A**.

1

## PARTIES

3. Plaintiff Stephanie Salgado is a resident of Wisconsin. She is 19-years-old and she was employed by Defendant AASS as a security guard. Salgado was terminated by Defendant AASS on or about May 26, 2022 for raising issues related to her employment, including those complained of herein.

4. Defendant A-Alert Security Services, Inc. is a corporation organized under the laws of Illinois with its principal place of business at 6160 North Cicero Ave, Suite 301, Chicago, Illinois 60646. It is engaged in the business of providing security guards and asset protection services to various businesses and government entities throughout Cook County. And as of the date of this Complaint, A-Alert Security Services, Inc. is not in good standing with the State of Illinois. Upon information and belief, Defendants have earned more than $1,000,000 in annual gross revenues for the preceding several years.

5. Defendant Rickey Martinez is the sole owner and principal of A-Alert Security Services, Inc. He is a resident of Morton Grove, Cook County, Illinois.

## JURISDICTION AND VENUE

6. This Court has subject matter jurisdiction over Defendants pursuant to 28 U.S.C. § 1331 as it asserts claims under a federal statute: 29 U.S.C. § 216(b).

7. This Court has supplemental subject matter jurisdiction over Plaintiff's Illinois law claims pursuant to 28 U.S.C. § 1367 as they arise from the same set of operative facts and resulted from the same conduct on the part of the Defendants.

8. This Court has personal jurisdiction over Defendants pursuant the Illinois "long arm" statute because Defendants: (a) transacted business in Illinois; (b) committed the misconduct alleged herein in Illinois; and (c) conducted its central operations out of Illinois. *See* 735 ILCS 5/2-209.

9. Venue is proper in this Court pursuant to 28 U.S.C. § 1391(b) because the facts and events giving rise to Plaintiff Salgado's claims occurred in this judicial district.

**COMMON FACTUAL ALLEGATIONS**

10. AASS contracted with several businesses and government bodies throughout Cook County to provide security and asset protection services.

11. AASS operated by sending its allegedly trained security guards, whom they referred to as 'officers', to various locations ("AASS secured locations") for which it was contracted to provide security

12. AASS provided uniforms and equipment that the guards were required to wear and carry. And it charged employees a $55 fee per pay period for "uniform maintenance".

13. AASS imposed strict work schedules on its employees and required its employees to rigidly follow the schedules it posted one week in advance.

14. AASS sergeants and other senior officers, especially one Officer Ali, strictly enforced rules regarding uniforms and took daily attendance to ensure its security guards arrived to work on-time and did not leave early.

15. AASS also provided some degree of training to its security guards, but this training and alleged certification process was not up to Illinois standards and questionably compliant, if at all, with the requirements of 225 ILCS 447 and other regulations imposed by the Illinois Department of Financial and Professional Regulation.

16. AASS' security guards routinely worked more than forty hours in a work week and 55-to-70-hour work weeks were the norm.

3

17. Despite this culture of overtime work, AASS never compensated its security guards at the statutorily–mandated overtime rates for the times they worked in excess of forty hours in a work week.

## FACTS SPECIFIC TO PLAINTIFF

18. AASS hired Salgado as a security guard in early December of 2021, when she was just 19 years old.

19. From December 10, 2021 to May 26, 2022, Salgado worked at several AASS secured locations and she was compensated at hourly rates ranging from twenty dollars ($20) to thirty dollars ($30) depending on the location.

20. As an AASS security guard, Salgado routinely worked over forty hours per week. For example, for the two-week pay period from December 25, 2021 to January 7, 2022, Salgado worked 64 hours in the first week and 70.5 hours in the second week. And for the pay period from January 8, 2022 to January 21, 2022, Salgado worked 50 hours in the first week and 84 hours in the second week.[1]

21. Despite routinely working over forty hours per week, Salgado was only ever compensated at her base hourly rate. She was never compensated at the statutorily–mandated overtime rate for the weeks she worked in excess of forty hours.

22. When Salgado learned of her right to overtime pay, she inquired about this matter to her sergeants at AASS, including one Sergeant Hernandez. AASS and Sgt. Hernandez informed her that she was an independent contractor and therefore not entitled to any overtime pay.

---

[1] These are the only payroll records that Salgado was able to locate in her possession. The Defendants are in possession of all of her payroll records.

23. When Salgado sought her payroll records, she was informed by the same sergeants that AASS does not keep payroll records since they "send everything to the IRS" without keeping any copies. Such statements, obviously, are untrue.

## COLLECTIVE ACTION ALLEGATIONS

24. Salgado brings this FLSA claim as a collective action on behalf of herself and all others similarly situated current and former security guards of AASS that worked for Defendants at any time in the preceding 3 years.

25. During the preceding 3 years, Salgado and all similarly situated current and former security guards had substantially similar job descriptions, job requirements, and pay rates.

26. Salgado and all similarly situated current and former security guards routinely worked far in excess of 40 hours in a work week and never received pay at the mandated overtime rate (times-and-a-half of the base rate) for hours worked in excess of 40 hours.

27. Salgado and all similarly situated current and former security guards were subjected to the Defendants' common policy and plan of violating the FLSA by willfully refusing overtime compensation to its security guards through methods such as misclassifying them as independent contractors. And the Defendants regularly followed this common policy and plan.

28. Salgado's claims are substantially similar to all similarly situated current and former security guards.

29. Defendants knew or should have known that their wage and hour practices violated the FLSA.

30. There are hundreds, if not thousands, of similarly situated current and former security guards who would benefit from this Court's authorizing notice of this action so these other aggrieved employees may opt-in to this lawsuit.

31. These similarly situated current and former employees are known to the Defendants and are identifiable in Defendants' timekeeping, payroll, and other records.

## COUNT I
## VIOLATION OF THE FLSA

32. Plaintiff realleges and repleads the allegations in Paragraphs 1 – 31 of this Complaint.

33. Despite AASS' efforts to misclassify her, Salgado was an "employee" of AASS as defined by the United States Fair Labor Standards Act in 29 U.S.C. § 203(e)(1).

34. AASS likewise employed many other security guards that all qualify as "employees" of AASS under the Fair Labor Standards Act in 29 U.S.C. § 203(e)(1).

35. AASS was an "employer" as defined by the FLSA in 29 U.S.C. § 203(d).

36. Martinez, individually, was also an "employer" as defined by the FLSA in 29 U.S.C. § 203(d).

37. AASS was an "enterprise engaged in commerce" as defined by the FLSA in 29 U.S.C. § 203(s)(1).

38. The FLSA, in 29 U.S.C. § 207, mandates that for all weeks in which an employee works more than forty (40) total hours, employers must compensate that employee at a rate one-and-a-half times their regular pay for all hours worked over forty (40) hours.

39. AASS was not exempt under 29 U.S.C. § 213 from the aforementioned overtime wage provision.

40. Thus, AASS and Martinez violated the overtime wage provision of the FLSA when they failed to properly compensate Salgado for the weeks that she worked in excess of forty hours.

**WHEREFORE**, the Plaintiff, Stephanie Salgado, on behalf of herself and all others similarly situated, prays that this Honorable Court enter judgment in her favor against the Defendants, A-Alert Security Services, Inc. and Ricky Martinez, for:

A. All unpaid overtime compensation, at a rate one-and-a-half times her normal rate, for every hour that Salgado worked in excess of forty hours in a single work week;

B. Liquidated damages in the amount of unpaid overtime compensation;

C. Plus interest;

D. All costs and reasonable attorney's fees incurred in prosecuting this action; and

E. Any further relief as this Court deems just and equitable.

## COUNT II
## VIOLATION OF THE ILLINOIS MINIMUM WAGE LAW

41. Plaintiff realleges and repleads the allegations in Paragraphs 1 – 40 of this Complaint.

42. Despite AASS' attempts to misclassify her, Salgado was an "employee" as defined by the IMWL in 820 ILCS 105/3(d).

43. AASS was an "employer" as defined by the IMWL in 820 ILCS 105/3(c).

44. The IMWL, in 820 ILCS 105/4a, mandates that for all weeks in which an employee works more than forty (40) total hours, employers must compensate that employee at a rate one-and-a-half times their regular pay for all hours worked in excess of forty (40) hours.

45. AASS was not exempt, under 820 ILCS 105/1 *et seq.*, from the aforementioned overtime wage provision.

46. Thus, AASS and Martinez violated the overtime wage provision of the IMWL when they failed to properly compensate Salgado for the weeks that she worked in excess of forty hours.

7

**WHEREFORE**, the Plaintiff, Stephanie Salgado, on behalf of herself and all others similarly situated, prays that this Honorable Court enter judgment in her favor against the Defendants, A-Alert Security Services, Inc. and Ricky Martinez, for:

A. All unpaid overtime compensation, at a rate one-and-a-half times her normal rate, for every hour that Salgado worked in excess of forty hours in a single work week;

B. Statutory damages in the amount of three times the amount of unpaid overtime;

C. Statutory interest damages;

D. All costs and reasonable attorney's fees incurred in prosecuting this action; and

E. Any further relief as this Court deems just and equitable.

## COUNT III
## WAGE THEFT

47. Plaintiff realleges and repleads the allegations in Paragraphs 1 – 46 of this Complaint.

48. The Illinois Wage Payment and Collection Act ("IWPCA"), 820 ILCS 115 *et seq.*, prohibits employers from taking certain deductions from an employee's wages or pay without the employee's express consent.

49. Salgado and all similarly situated past and present security guards that work or worked for AASS are "employees" under 820 ILCS 115/2.

50. AASS and Rickey Martinez are "employers" under 820 ILCS 115/2.

51. Illinois labor and employment regulations specifically prohibit employers from deducting uniform maintenance or cleaning costs from employees' paychecks without the employee's explicit consent.

52. AASS never sought not acquired consent from Salgado or any other similarly situated security guards to deduct any amount for "uniform maintenance" from their paychecks.

8

53. In the absence of consent, therefore, AASS' deduction for "uniform maintenance" constituted wage theft under the IWPCA and its related state regulations.

**WHEREFORE**, the Plaintiff, Stephanie Salgado, on behalf of herself and all others similarly situated, prays that this Honorable Court enter judgment in her favor against the Defendants, A-Alert Security Services, Inc. and Ricky Martinez, for:

A. An amount equal to the full total of all wrongful deductions made for "uniform maintenance";

B. Statutory damages of 5% of the deducted amount per month for every month in the applicable statutory period;

C. Statutory interest damages;

D. All costs and reasonable attorney's fees incurred in prosecuting this action; and

E. Any further relief as this Court deems just and equitable.

Dated: November 7, 2022

Respectfully submitted,

Stephanie Salgado (Nov 7, 2022 10:33 CST)
*Plaintiff*

By: FUKSA KHORSHID, LLC

/s William E. Meyer, Jr.
*Attorney for Plaintiff*

FUKSA KHORSHID, LLC
William E. Meyer, Jr. (ARDC No. 6207345)
Alex Lee (ARDC No. 6339909)
200 W. Superior St., Ste. 410
Chicago, IL 60654
T: 312.266.2221
F: 312.266.2224
william@fklawfirm.com
alex@fklawfirm.com

# Exhibit A

2

**NOTICE OF CONSENT TO BECOME A PARTY PLAINTIFF IN A
COLLECTIVE ACTION UNDER THE FAIR LABOR STANDARDS ACT**

By sighing below, I represent to the Court that I have been employed by A-Alert Security Services, Inc., or one of their parents, subsidiaries, or affiliated companies within the prior three (3) years and in one or more workweeks, I was not paid all of the minimum and/or overtime wages owed to me under the Fair labor Standards Act, 29 U.S.C. 201, *et seq*. Through this Consent, I authorize the filing and prosecution of this Fair Labor Standards Act action in my name and on behalf of all persons similarly situated to me.


Name: _____STEPHANIE SALGADO_____
               (Print Your Name)

Signature: _[signature: Stephanie Salgado (Nov 7, 2022 09:55 CST)]_

Dated: __Nov 7, 2022_____

# Exhibit B



Page 1 of 1

A-Alert Security Service

## Ofc. Stephanie Salgado

### Timesheet: 01/08/22 - 01/21/22

### Sums

| Category | Hours | | |
|---|---|---|---|
| | Week 1 | Week 2 | Total |
| Shift | 50.00 | 84.00 | 134.00 |
| 1 Total Categories | 50.00 | 84.00 | 134.00 |

### Details

| Type | Times | Regular | OT |
|---|---|---|---|
| Shift (DCFS-76th street) | 01/11/22 00:00 - 07:00 | 7.00 | 0.00 |
| Shift (AM-Michigan) | 01/12/22 12:00 - 00:00 | 12.00 | 0.00 |
| Shift (AM-Michigan) | 01/13/22 12:00 - 00:00 | 12.00 | 0.00 |
| Shift (DCFS-76th street) | 01/14/22 00:00 - 07:00 | 7.00 | 0.00 |
| Shift (AM-Michigan) | 01/14/22 12:00 - 00:00 | 12.00 | 0.00 |
| Shift (AM-Michigan) | 01/15/22 12:00 - 00:00 | 12.00 | 0.00 |
| Shift (AM-Michigan) | 01/16/22 12:00 - 00:00 | 12.00 | 0.00 |
| Shift (AM-Michigan) | 01/17/22 12:00 - 00:00 | 12.00 | 0.00 |
| Shift (AM-Michigan) | 01/18/22 12:00 - 00:00 | 12.00 | 0.00 |
| Shift (AM-Michigan) | 01/19/22 12:00 - 00:00 | 12.00 | 0.00 |
| Shift (AM-Michigan) | 01/20/22 12:00 - 00:00 | 12.00 | 0.00 |
| Shift (AM-Michigan) | 01/21/22 12:00 - 00:00 | 12.00 | 0.00 |
| | Totals: | 134.00 | 0.00 |

12 Total Entries

Aunt Martha———————— 120Hrs x $20 = $2400
DCFS 76th———————— 14Hrs x $23 = $322

Jacket—————————————— -$55

Net Total $2697

Report generated by PlanIt Police at 01/24/2022 13:50



A-Alert Security Service  
Page 1 of 1

**Ofc. Stephanie Salgado**

### Timesheet: 12/25/21 - 01/07/22

**Sums**

| Category | Hours | | |
|---|---|---|---|
| | Week 1 | Week 2 | Total |
| Shift | 64.00 | 70.50 | 134.50 |
| 1 Total Categories | 64.00 | 70.50 | 134.50 |

**Details**

| Type | Times | Regular | OT |
|---|---|---|---|
| Shift (AM-Michigan) | 12/26/21 12:00 - 00:00 | 12.00 | 0.00 |
| Shift (DCFS-76th street) | 12/27/21 00:00 - 07:00 | 7.00 | 0.00 |
| Shift (DCFS-76th street) | 12/28/21 00:00 - 07:00 | 7.00 | 0.00 |
| Shift (DCFS-76th street) | 12/29/21 00:00 - 07:00 | 7.00 | 0.00 |
| Shift (AM-Michigan) | 12/29/21 12:00 - 00:00 | 12.00 | 0.00 |
| Shift (DCFS-76th street) | 12/30/21 00:00 - 07:00 | 7.00 | 0.00 |
| Shift (AM-Michigan) | 12/30/21 12:00 - 00:00 | 12.00 | 0.00 |
| Shift (AM-Michigan) | 01/01/22 12:00 - 00:00 | 12.00 | 0.00 |
| Shift (DCFS-76th street) | 01/02/22 00:00 - 07:00 | 7.00 | 0.00 |
| Shift (AM-Michigan) | 01/02/22 12:00 - 00:00 | 12.00 | 0.00 |
| Shift (DCFS-76th street) | 01/03/22 00:00 - 07:00 | 7.00 | 0.00 |
| Shift (AM-Michigan) | 01/04/22 12:00 - 15:30 | 3.50 | 0.00 |
| Shift (AM-Michigan) | 01/05/22 12:00 - 00:00 | 12.00 | 0.00 |
| Shift (DCFS-76th street) | 01/06/22 00:00 - 07:00 | 7.00 | 0.00 |
| Shift (AM-Michigan) | 01/06/22 12:00 - 22:00 | 10.00 | 0.00 |
| **15 Total Entries** | **Totals:** | **134.50** | **0.00** |

AM-Michigan----85.5 hrs x $20 = $1710  
DCFS---49 hrs x $22 = $1078

**TOTAL $2788**

Report generated by PlanIt Police at 01/14/2022 08:36